JAMES WHITNEY vs. INHABITANTS OF CUMBERLAND.

*Defective way; evidence of.*

At the foot of a hill a highway became comparatively level and the travel passed, for several rods, upon each side of the middle track, as well as in it, the side tracks being largely used. In October, 1870, the town constructed a culvert across the centre of the located way, about eighteen feet long, with the surface of the covering stones about six feet wide and eighteen inches above the general level of the ground. Earth was carted in to make the grade on each approach to the culvert for a distance of six to fifteen feet, but the stones of one side of the culvert were exposed. The culvert, thus constructed, left ample space for teams to pass along the easterly side of it, in the old side track. The earth used to fill the approaches became very muddy with the fall rains, and was then trodden up and frozen in a very rough condition. The embankment of the culvert was not railed or guarded. To avoid the bad place in the middle of the road, thus caused, teams used to sheer to the east, pass the end of the culvert and then re-enter the main road. After the snow came the wind swept it from the culvert and, to avoid the bare place, teams continued to follow the side track. The plaintiff was familiar with the road before the building of the culvert but had not passed it afterwards until the time of the injury, which happened about ten o'clock of the night of the fifteenth of February, 1871, and was caused by his driving along the eastern side track so near to the culvert that one runner of the sleigh struck the exposed stones, whereby he was thrown out and injured. Under these circumstances a finding by the jury that the way was so defective as to make the town liable for the injury was not so clearly unsupported by the evidence as to justify setting aside the verdict.

Upon this state of facts, the defendants asked to have the jury instructed that "if Whitney was driving at the rate of five or six miles an hour, as he testifies, in as dark a night as he describes that of the accident, then he was not in the exercise of due care." This instruction was properly refused, the question of ordinary care having been left to the jury under correct instructions.

On exceptions and motion for a new trial.

CASE for an injury received by the plaintiff on the night of the fifteenth of February, 1871, while riding along a way in the defendant town which it was bound to keep in repair but which was alleged then to have been so defective as to occasion the accident. The substance of the testimony is given in the opinion. The next summer after the accident the road was banked up so as

to confine travel to the middle track. This action was brought December 15, 1871, and entered at the February term, 1872, of the superior court where it was three times tried, the jury twice failing to agree. At the last trial the plaintiff had a verdict for fifteen hundred dollars, rendered April 27, 1874.

The defendants moved to have this verdict set aside as against law and evidence, and their arguments were principally directed to the maintenance of this proposition. Only one request for instructions was made, which was this; the defendants requested the court to instruct the jury upon the evidence as set forth in the opinion, as follows :—

"If Whitney was driving at the rate of five or six miles an hour, as he testifies, in as dark a night as he describes that of the accident, then he was not in the exercise of due care."

Which request was refused by the court; but the court did give the jury proper instructions as to what constituted due care, and what are the requirements of the law touching the care and prudence necessary to be established by the evidence on the part of the plaintiff to entitle him to recover in said action, and left it to the jury to determine, from the evidence in the case, whether the plaintiff was or not in the exercise of due care at the time of the injury. To all which rulings and instructions and refusals to instruct, the defendants excepted.

*Strout & Gage* for the defendants.

The facts were ably and elaborately argued. It was contended that there was no hidden defect, as in *Cobb* v. *Standish*, 14 Maine, 198, but the path taken was just what it appeared to be, a snow track in the ditch to avoid bare ground in the road. The plaintiff drove out of the road and upon this snow track, in a dark night, and was injured by running into the road too soon, as he hit the foundation stone of the culvert, which was westerly of the snow path the travel had made there. He was out of the track wrought by the town, itself safe and convenient. He had a right to go where he did, but at his own risk. The town was not in

fault in not preventing the use of the snow track; in fact it had no right to do so there being no pitfall or trap in it. *Dickey* v. *Maine Telegraph Company*, 46 Maine, 485.

The proposition that where there is a safe and suitably prepared track, and the traveller goes out of that to find snow, and is injured, the town is not liable is too clear for argument. *Rice* v. *Montpelier*, 19 Vt., 470; *Tisdale* v. *Norton*, 8 Metc., 388; *Shepardson* v. *Colerain*, 13 Metc., 55.

This was not, as plaintiff contended for the first time at the last trial, a case of two parallel roads, as in *Hall* v. *Unity*, 57 Maine, 532, 535, both of which the town was bound to keep in repair: it was simply a turn-out; as distinct as any ever made to a watering-place. Thousands of such are found everywhere, when snow begins to leave the road, and if towns are to be held liable for injuries in such snow-tracks, their only safety is to grade the whole width of the location, which the law does not require.

To drive as Mr. Whitney did, upon so dark a night, was so obviously careless that a nonsuit should have been ordered. *Brown* v. *E. & N. A. Railway Company*, 58 Maine, 384.

And as no such motion was made, the court should have instructed the jury as requested.

*Strout & Holmes* for the plaintiff.

The exceptions should be overruled. *Webb* v. *Portland and Kennebec Railroad Company*, 57 Maine, 131.

The facts were then carefully considered and the arguments of the defendants replied to. It was claimed that this case is like that of *Hayden* v. *Inhabitants of Attleborough*, 7 Gray, 338, and that the instruction found upon page 342 of that volume, and approved by the court in Massachusetts, was wholly applicable to the present case.

VIRGIN, J. The general course of the highway is northerly and southerly. Near the foot of the hill in the vicinity of Herrick's house, the surface of the earth within the limits of the way

being comparatively level, the travel spread out easterly and westerly of the middle track some forty to fifty feet and several rods in length. To avoid the water which in wet seasons stood in, and sometimes ran across the main track, the town, in October, 1870, constructed a stone culvert directly across the centre of the located way, about eighteen feet in length, with the surface of the covering stones about six feet wide and eighteen to twenty inches above the general surface of the ground. To overcome this height, instead of turnpiking the road, earth was carted in on either side of the culvert making each grade six to fifteen feet long, but leaving the stones at the east end of the culvert exposed. The culvert thus constructed, left ample space for teams to pass and re-pass along the easterly side of the highway as they did before the culvert was built. The earth composing the approaches to the culvert, by the action of the fall rains and the passing of teams becoming "podged up," froze in that condition. There being no railing, embankment or other thing to prevent, teams for the purpose of avoiding the abruptness and roughness of the grades before the snows fell, continued to sheer to the east, pass the end of the culvert, and sweep gradually back into the main travelled path. After the snows came, the winds swept it from the culvert, and the principal travel continued to the eastward.

The plaintiff frequently passed along this highway before the culvert was built, but had no knowledge of the culvert until he was injured. About ten o'clock in the evening of February 15, 1871, while riding along that highway with his wife and daughter, in a pung sleigh, his horse instinctively following the principal path, took the eastern track, and he went so near to the easterly end of the culvert, that the sleigh runner struck the exposed stones of the culvert, whereby the plaintiff was thrown from his sleigh and injured.

The jury found the way defective; and we cannot say the verdict is against law. While a traveller in the day-time, might with ordinary care pass along that highway with safety and convenience, a stranger by night would be exposed to injury there. Had the

town adopted the precautions prior to February 15, which they did subsequently, this case would never have troubled them.

The requested instruction was properly denied.

*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS and PETERS, JJ., concurred.